

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| IN THE MATTER OF THE SEARCH AND SEIZURE OF CERTAIN ELECTRONIC MEDIA | Case No. **18-2443-ADC** <br><br> **UNDER SEAL** |
|---|---|

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Gary T. Smith, a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) being duly sworn, states:

### BACKGROUND

1. On June 30, 2017, United States Magistrate Judge J. Mark Coulson approved a warrant for the search of twenty-four (24) cellular telephones recovered from the person or residence of indicted drug traffickers of the Old York Money Gang. *See* Misc. No. 17-1715-JMC. However, investigators were not able to search several of these cellular phones because then existing technology did not permit the extraction of their content. I am resubmitting this Affidavit in an attempt to once more obtain a warrant to search these phones, as investigators believe it may now be possible to extract and download the content of the phones listed below which were not initially searched and extracted:

- A black Apple I-Phone (ATF Property number 31)[1] (**Subject Electronic Device 1**)

- An Apple I-Phone (ATF Property number 38) (**Subject Electronic Device 5**);

- A black Apple I-Phone bearing IMEI number 990002287748766 (**Subject Electronic**

---

[1] A few of the **Subject Electronic Devices** do not have visible identifying serial numbers or other identifying labels, and I have therefore identified them by their ATF property seizure designation which, in concert with the location of seizure, should specifically identify the device at issue.

Device 7);

- An Apple I-Phone bearing IMEI number 352006067031808 (**Subject Electronic Device 11**);

- An Apple I-Phone bearing IMEI number 35202606359836 (**Subject Electronic Device 12**);

- A black Apple I-Phone (ATF property number 61) (**Subject Electronic Device 19**);

- A pink Apple I-Phone (ATF property number 62) (**Subject Electronic Device 20**);

- A silver Apple I-Phone (IMEI 013884007360664) (**Subject Electronic Device 21**);

- A white Apple I-Phone bearing IMEI number 359300066793770 (**Subject Electronic Device 22**);

- A pink Apple I-Phone (ATF property number 97) (**Subject Electronic Device 25**)

*See also* Attachment A.

2. Because of the passage of time, and in the abundance of caution, I am seeking another search warrant to once more search these phones. There is one exception. **Subject Electronic Device 25** was not a part of the previous warrant and was recovered incident to the arrest of Darrin MOSLEY.

3. The items to be searched are believed to contain and conceal items that constitute evidence of a racketeering and drug trafficking conspiracy in violation of Title 18 of the United States Code Section 1962(d), and 21 United States Code Sections 841(a), 846. The phones are currently in the custody of the ATF.

4. The applied for warrant would authorize the forensic examination of the **Subject Electronic Devices** for the purpose of identifying electronically stored data particularly described

2



in Attachment B and using the protocols described in Attachment B by members of the ATF, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation.

## AGENT BACKGROUND

5. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

6. Your Affiant, Gary T. Smith, has been a sworn officer of the Baltimore Police Department since September 2001. Furthermore, your Affiant, since February 2010, has been assigned as a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives and is now assigned to Group VI. Your Affiant successfully completed a six-month basic course of training that included classes pertaining to Controlled Dangerous Substances (CDS). Your Affiant has also attended more than five advanced investigative courses. Prior assignments include uniform patrol, District Operations Unit, and the Violent Crime Impact Team. Your Affiant has personally conducted and participated in numerous investigations involving criminal activity including but not limited to CDS, violent crime, and firearms violations. Your Affiant has participated in the arrest of numerous persons for CDS, violent crime, and/or firearms violations and has authored and/or executed numerous Search and Seizure Warrants relating to CDS, violent crime, and/or firearms violations.

7. Through training and interviews of hundreds of persons arrested for CDS offenses, your Affiant is familiar with the actions, traits, habits, and terminology utilized by traffickers of

3



CDS. Your Affiant has also participated in hundreds of surveillances of suspected drug traffickers.

8. This investigation is being conducted by the ATF, and the Baltimore Police Department (BPD). I have personally participated in this investigation and make this affidavit based upon my personal participation in this investigation and based on reports made by other law enforcement agents, as well as confidential informants discussed in more detail below. Except where otherwise noted, the information set forth in this affidavit has been provided to me by other law enforcement agents who have assisted in the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement was made by another law enforcement officer (any of whom may have had either direct or hearsay knowledge of that statement) to whom I or other law enforcement officers have spoken or whose reports I have reviewed. Such statements are reported in substance and in part, unless otherwise indicated. Likewise, information resulting from surveillance sets forth either my personal observations or information provided directly or indirectly through other law enforcement officers who conducted such surveillance. Not all of the facts of the investigation known to me are contained herein, only those necessary to establish probable cause for the stated offense.

9. Based on my knowledge, training, and experience, I know that individuals involved with drug trafficking frequently use cellular telephones, communication devices, and other electronic media storage to further their illegal activities. Based upon your affiant's knowledge, training, and experience, and participation in this and other drug trafficking investigations, I know the following:

    a. The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and

4

instrumentalities of pending criminal activity. Cell phones have both digital storage capacity and digital camera capabilities;

      b.     Cellular telephones are an indispensable tool of the drug trafficking trade. Drug traffickers use cellular telephones, push-to-talk telephones, Short Message Service ("SMS"), electronic-mail, and similar electronic means and/or devices, often under fictitious names or names other than their own, in order to maintain contact with other conspirators. In addition, drug traffickers will often change their cellphones following the arrest of a member of their drug trafficking organization (DTO), or at random times in order to frustrate law enforcement efforts;

      c.     Drug traffickers often place nominal control and ownership of telephones in names other that their own to avoid detection of those telephones by government agencies. Even though telephones are in the names of other people, drug traffickers retain actual ownership, control, and use of the telephone, exercising dominion and control over them;

      d.     Drug traffickers frequently utilize cellular telephones, pagers and other electronic communications devices to facilitate illegal drug transactions. In investigations such as this, cellular telephones are direct evidence of the criminal conspiracy. A suspect's possession of a cellular telephone with a certain call number (or electronic serial number) identified during the investigation is evidence that that suspect is the user of the cellular telephone and constitutes evidence of the suspect's participation in the conspiracy. Likewise, documents referencing the possession or use of cellphones, such as bills, cellphone boxes, receipts for phones or payment, etc., are of evidential value insofar as their evidence of a suspect's possession of a particular phone. Moreover, the electronically stored information on these devices is of evidentiary value in identifying other members of the drug trafficking conspiracy and establishing the relationship

5



between these individuals;

    e.    Individuals involved in drug trafficking often use digital storage devices to maintain telephone number "contact lists" of individuals who are customers, suppliers, or co-conspirators and sometimes take photographs of themselves and/or co-conspirators;

    f.    Individuals who possess or own handguns or other weapons frequently photograph themselves holding the handguns or other weapons;

    g.    Individuals involved in drug trafficking often employ cellular telephones to arrange for the transaction of controlled substances;

    h.    Individuals involved in drug trafficking often have photographs on their cellular telephones depicting controlled substances and the proceeds therefrom; and

    i.    Cell phones often record the phone's historical location data.

## PROBABLE CAUSE

10.    The ATF is investigating a drug trafficking gang that was operating in the Waverly neighborhood of Baltimore, Maryland that has been responsible for many historical acts of violence and which—until their indictment—operated drug shops at various areas throughout the Waverly neighborhood.[2] Based on physical surveillance, information gleaned from confidential sources, undercover controlled purchases, review of social media accounts, and review of phone

---

[2] Because this Affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated.



records, there is evidence that Terrell PLUMMER, Trevon BEASLEY, Tyrone JAMISON, Davonte RICH, Davin LAWSON, Calvin WATSON, Tyron BROWN, Emmanuel ROSE, Malik JOHNSON, Jason SNOWDEN, Darrin MOSLEY, Brandon BRIDGES, and others both known and unknown to investigators (herein the **Target Subjects**) comprise a drug trafficking gang called the "Old York Money Gang" (abbreviated "OYMG").

11. Based on the evidence, I believe OYMG is an armed and violent drug trafficking organization ("DTO") that operated near the corner of Greenmount and Venable Street in Baltimore City, Maryland. OYMG has sold heroin, crack cocaine, marijuana, and prescription pills to retail customers from an open-air style drug "shop." Based on evidence gathered to date, including information provided by confidential sources, investigators believe that DTO members include the users of the **Subject Electronic Devices**—namely Terrell PLUMMER, Trevon BEASLEY, Tyrone JAMISON, Davin LAWSON, Calvin WATSON, Tyron BROWN, Darrin MOSLEY, and Davonte RICH.

## CONFIDENTIAL SOURCES

12. Confidential Source #1, Confidential Source #2, and Confidential Source #3 grew up in the Waverly neighborhood and know the **Target Subjects** intimately through personal experiences and observations over the past several years. Both CS1 and CS2 are cooperating with law enforcement in the hopes of obtaining leniency on pending criminal charges. CS3 is cooperating out of concern for the community, and occasional financial compensation. CS1, CS2, and CS3 state that from the spring of 2014 until April 2017, the **Target Subjects** have been involved in an organization that distributes controlled substances throughout the Waverly neighborhood, most notably at or around the area of 35th Street and Old York Road, Greenmount

7



and Venable Street, and other locations in the neighborhood.[3]

## CONTROLLED PURCHASES FROM SUBJECTS

13. The ATF and BPD started conducting controlled purchases from the **Target Subjects** in October 2016. Controlled purchases resumed January 2017. It was not until late March and early April 2017 that a proactive investigation of the DTO resumed. Accordingly, any gaps in the probable cause between October, January and April results only by virtue of the fact that law enforcement resources were only directed to the DTO during those periods.

**Terrell "Rell" PLUMMER**

14. On March 23, 2017, the ATF conducted a controlled purchase of crack-cocaine from PLUMMER through the use of an ATF Confidential Informant ("CI") 7816. CI 7816 made a controlled purchase of crack cocaine near the intersection of McKewin Avenue and Frisby Street. On March 29, 2017, ATF CI 7816 made a second controlled purchase of crack-cocaine from PLUMMER near the intersection of McKewin and Frisby Street.

15. In the second week of April, CS2 arranged to purchase narcotics from PLUMMER. When CS2 met PLUMMER around Greenmount and Venable Street, ATF investigators and CS2 observed hand-to-hand exchanges between PLUMMER and other customers that, based on my training and experience, involved exchanges of narcotics for U.S. currency.

**Trevon "Tre" BEASLEY**

---

[3] CS1, CS2, and CS3 base their knowledge from their own experiences either buying drugs from the **Target Subjects**, or their own observations of drug transactions in the neighborhood. They claim that the **Target Subjects** coordinate their drug trafficking together—assigning different roles to different members of OYMG and otherwise assisting one another in the distribution of controlled substances.

8

16. On October 20, 2016, the ATF conducted a controlled purchase of crack-cocaine from BEASLEY with the use of ATF CI 7816. On October 27, 2016 ATF CI 7816 made a controlled purchase of crack-cocaine and heroin from BEASLEY and LAWSON. On November 3, 2016, ATF CI 7816 made a controlled purchase of crack-cocaine and heroin from BEASLEY in exchange for $100.00 in ATF funds. On January 5, 2017, with the help of a Baltimore Police Department ("BPD") Under Cover ("UC") Squad, a BPD UC made a controlled purchase of crack-cocaine and heroin. All controlled purchases with BEASLEY occurred in and around the 3300 block of Greenmount Avenue.

17. In the second week of April, ATF CI 7816 arranged for another purchase of controlled substance from BEASLEY while in the presence of WATSON, JAMISON, RICH, and others associated with this organization. BEASLEY told the CI that he had "boy [heroin] and girl [crack-cocaine]" and advised that "CHOPPER" (RICH) had the 'grass' [marijuana]." Later in April, CS2 observed BEASLEY hand US currency to PLUMMER, which he received from an unidentified individual. After, ATF CI 15175 watched PLUMMER conduct a hand-to-hand exchange of suspected crack cocaine with the unidentified individual. Also present during the exchanges was JAMISON, WATSON, RICH and others associated with this organization.

**Davin "D" LAWSON**

18. On October 27, 2016, ATF CI 7816 made a controlled purchase of both suspected crack-cocaine and suspected heroin from LAWSON and BEASLEY. On January 2, 2017, a BPD UC made a controlled purchase of crack cocaine from LAWSON. On January 4, 2017, a BPD UC made a controlled purchase of crack-cocaine from LAWSON. On January 9, 2017, a BPD UC made controlled purchases of crack cocaine from LAWSON. All controlled purchases with

9

Case 1:18-mj-02443-ADC   Document 3   Filed 09/20/18   Page 10 of 20



LAWSON occurred in and around the 3300 to 3500 blocks of Greenmount Avenue. During the course of this investigation, LAWSON contacted CI 7816 numerous times by way of cell phone regarding possible drug exchanges. On April 12, 2017, LAWSON texted CI 7816 "Out early wit it. Hit me." Based on their exclusive relationship of transacting narcotics, I believe that LAWSON was soliciting ("Hit me") CI 7816 to purchase more narcotics ("wit it."). On April 13, 2017, a BPD UC attempted to contact LAWSON. BROWN picked up the phone. In the course of the ensuing narcotics transaction, BROWN stated that he "worked with D."

### Calvin "Monster" WATSON & Tyrone "Ty" JAMISON

19. On January 3, 2017, a BPD UC entered "Mama's Grocery" Store, located at 3322 GREENMOUNT AVENUE. Inside, the BPD UC observed BEASLEY, WATSON and JAMISON. The UC initiated conversation asking if there were any "Girls" (common term for crack-cocaine) and BEASLEY provided his cell phone number, then walked away. The BPD UC then ordered $40.00 worth of crack cocaine from JAMISON. The UC then observed JAMISON walk to WATSON, who handed JAMISON suspected narcotics prior to JAMISON serving them to the UC.

20. Investigators did not have occasion to purchase directly from JAMISON or WATSON between January 3, 2017 and April 25, 2017. Nevertheless, in addition to the evidence seized from their residences and vehicles indicating ongoing drug trafficking, the ATF surveilled the drug trafficking organization in the month of April and observed JAMISON and WATSON consistently in or around the DTO drug shops and, most importantly, present during narcotics transactions with fellow DTO members. For example, when BEASLEY solicited ATF CI 7816 to sell him/her heroin and crack-cocaine in the second week of April, he did so in the presence of

10

WATSON and JAMISON. Also, when investigators observed PLUMMER and BEASLEY engaged in the apparent transaction of hand-to-hand narcotics exchanges, such exchanges were done in the presence of WATSON and JAMISON.

21. I submit these events, in concert with the general surveillance and information from confidential sources that WATSON and JAMISON have long been part of the DTO, demonstrates that WATSON and JAMISON did not cease their participation in the drug trafficking conspiracy. Based on my training and experience, I know that drug trafficking is an ongoing activity and therefore the crimes at issue and the evidence thereof is not limited to the time of the UC buys in this case.

22. Additionally on April 17, 2017, WATSON and BEASLEY and two other DTO members were arrested in Baltimore County for attempted burglary of an establishment. In a search incident to arrest, officers recovered over $800.00 from WATSON despite that WATSON did not enter the building. Based on surveillance, confidential sources, and training and experience, I believe this money was proceeds from drug trafficking.

**Tyron "Boobie" BROWN**

23. On April 12, 2017, a BPD UC approached a black male later identified as BROWN. The UC made a controlled purchase of suspected crack cocaine from BROWN in the 400 block of Venable Avenue. The 400 block of Venable Avenue intersects with the 3300 block of Greenmount Avenue and "Mama's Grocery" Store—one of the DTO drug shops. On April 13, 2017, a BPD UC placed a telephone call to phone associated with LAWSON. The UC was previously provided the phone number in a previous controlled purchase and advised that BROWN answered. BROWN served the UC crack cocaine in exchange for BPD departmental funds.



### Devonte "Chopper" RICH

24. On January 30, 2017, RICH was observed in the 3300 block of Greenmount Avenue by BPD investigators. The investigators observed RICH make a suspected drug transaction of narcotics with an unknown buyer. RICH was stopped and found in possession of twenty four (24) clear ziplock bags containing marijuana and four (4) zip lock bags containing marijuana, totaling 17 grams of marijuana. Also recovered was $1,217.00 dollars. Based on training and experience, I believe that this large amount of U.S. currency represented proceeds of drug trafficking.

25. Investigators have not purchased directly from RICH since January 30, 2017. However, in the second week of April, ATF CI 7816 had a conversation with BEASLEY while in the presence of WATSON, JAMISON, RICH, and others associated with this organization. BEASLEY stated he had "boy [heroin] and girl [crack-cocaine]" and advised that "'CHOPPER' (RICH) had the 'grass' [marijuana]." This is consistent with the events of January 30, 2017, in which CHOPPER had been arrested for trafficking marihuana. Based on training and experience, I know that DTO's often assign different members to sell different types of drugs, and the evidence suggests that RICH is responsible for selling marihuana [grass].

26. Additionally, as with WATSON and JAMISON, investigators surveilled the drug trafficking organization in the month of April and observed RICH consistently in or around the DTO drug shops and, most importantly, present during narcotics transactions with fellow DTO members. For example, when BEASLEY solicited ATF CI 7816 to sell him/her heroin and crack-cocaine in the second week of April, he did so in the presence of RICH, WATSON, and JAMISON. Also, when investigators observed PLUMMER and BEASLEY engaged in the apparent transaction of hand-to-hand narcotics exchanges, such exchanges were done in the presence of



RICH, WATSON, and JAMISON.

27. As with WATSON and JAMISON, RICH's continued presence in the DTO shops and with DTO members during transactions demonstrates his continued participation in the drug trafficking conspiracy. In addition to the evidence seized from his residence, confidential sources claim that RICH has been a member of the DTO continually since 2014. Based on my training and experience, I know that drug trafficking is an ongoing activity and therefore the crimes at issue and the evidence thereof is not limited to the time of the confirmed drug transactions in this case.

## SOCIAL MEDIA

28. Throughout the investigation, investigators have reviewed social media (Facebook and Instagram) profiles of the **Target Subjects** through both publicly available content and a search warrant of those accounts. The review of these social media accounts has uncovered extensive evidence of a racketeering gang enterprise known as OYMG. Countless pictures and posts depict members of the gang, including PLUMMER, BEASLEY, LAWSON, BROWN, MOSLEY, RICH, JAMISON, and others, broadcasting their collective association in OYMG through hand signs (forming an "OY" for "Old York"), literal captions ("hashtags" such as "#OYMG"), and various other pictures and messages displaying gang membership and referencing drug trafficking. Videos depict OYMG members assaulting people and discussing narcotics trafficking, and messages and posts also reference drug trafficking as well.

## HISTORICAL ARRESTS

29. Investigators have also reviewed past arrests of OYMG members, including PLUMMER, BEASLEY, JAMISON, RICH, LAWSON, BROWN and MOSLEY, and uncovered evidence corroborating their drug trafficking activity. For example, on October 26, 2016,



Baltimore City Police Department officers videotaped MOSLEY engaging in hand to hand transactions (indicative of drug trafficking), and thereafter recovered controlled substances (heroin and cocaine base) from one of MOSLEY's customers and from the area he had been retrieving controlled substances. On January 29, 2015, BEASLEY and an OYMG coconspirator (Avery HAWKINS) were arrested in a vehicle with a firearm in close reach. BEASLEY had a car key in his pocket that belonged to an automobile where controlled substances were found. On February 2, 2016, PLUMMER was arrested after driving a vehicle found to contain cocaine base on the driver's side of the door.

## VIOLENCE COMMITTED BY BEASLEY AND MOSLEY

30. Two confidential sources,[4] one cooperating in the hopes of leniency on pending criminal charges and one who provided information for hopes of "good karma," have identified BEASLEY and MOSLEY as the perpetrators of a murder on November 15, 2016 of Tyrone SERVANCE and the attempted murder of two victims two weeks later on December 1, 2016. Later that day, on December 1, 2016, MOSLEY received a phone call from PLUMMER (then in jail) in which MOSLEY referenced the shooting victim by name and discussed the ongoing acrimony between OYMG and this victim. These same confidential sources claim that MOSLEY and BEASLEY, among the other OYMG members, were involved in an ongoing conspiracy to distribute controlled substances from 2015 to 2017.

## THE RECOVERY OF THE TARGET TELPEHONES

31. Based on the foregoing, on April 25, 2017, United States Magistrate Judge

---

[4] Both sources have criminal convictions in their past, but I find their information reliable and have been corroborated both in the past and in the present case.

14

Stephanie A. Gallagher authorized warrants for the search of residences and vehicles of the **Target Subjects**. On April 26, 2017, the ATF executed the warrants and recovered the **Subject Electronic Devices** pursuant to these warrants.

### PLUMMER (Subject Electronic Device 1)

32. A search of PLUMMER's residence (810 Exeter Hall Avenue) resulted in the seizure of a quantity of heroin, fentanyl, cocaine, and narcotics adulterants, drug trafficking paraphernalia, as well as **Subject Electronic Device 1** in PLUMMER's bedroom. PLUMMER also told investigators the phones belonged to him.

### BEASLEY (Subject Electronic Device 5)

33. A search of BEASLEY's residence (4327 Roberton Avenue) resulted in the seizure of crack-cocaine, Oxycodone, and marihuana, U.S. currency, drug trafficking paraphernalia, and **Subject Electronic Device 5** in BEASLEY's bedroom.

### BROWN (Subject Electronic Device 7)

34. A search of BROWN's residence (3707 Greenmount Avenue) resulted in the seizure of **Subject Electronic Device 7** from BROWN's bedroom.

### RICH (Subject Electronic Devices 11-12)

35. A search of RICH's residence (1631 N. Aisquith Street) resulted in the seizure of a substantial quantity of marihuana (over 200 grams), drug trafficking paraphernalia, and **Subject Electronic Devices 11-12** from RICH's bedroom.

### JAMISON (Subject Electronic Devices 19-21)

36. A search of JAMISON's residence (3811 Ednor Road) resulted in the seizure of cutting agents for narcotics, marijuana, drug trafficking paraphernalia, U.S. currency, and **Subject**

**Electronic Device 19** from JAMISON's bedroom. A search of JAMISON's vehicle (2005 Honda) resulted in the recovery of **Subject Electronic Devices 20-21**.

### LAWSON (Subject Electronic Device 22)

37. A search of LAWSON's residence (3514 Old York Road) resulted in the seizure of crack-cocaine, drug trafficking paraphernalia, and **Subject Electronic Device 22** (which Lawson admitted to owning).

### MOSLEY (Subject Electronic Device 25)

38. On September 12, 2017, a federal grand jury returned an Indictment against MOSLEY for participating in a racketeering enterprise. *See* Criminal No. GLR-17-223. On or around November 15, 2017, U.S. Marshals Service [~~Baltimore City Police officers~~] arrested MOSLEY while in possession of **Subject Electronic Device 25**. This is the only phone for which a search warrant has not previously been authorized.

### CONCLUSION

39. Based on the foregoing, I submit that a search of the **Subject Electronic Devices** will reveal evidence of gang association, drug trafficking, acts of violence, and other criminal acts committed by OYMG in the form of text messages, phone calls, photographs, videos, web searches, contact lists, and other digital content found on these phones. Even with the lapse of time between individual criminal acts and the recovery of the phones, I know that drug trafficking and gang activity is an ongoing activity—as evidenced by the social media accounts and additional evidence in this case.

40. As mentioned previously, the Honorable J. Mark Coulson already authorized a search warrant for the **Subject Electronic Devices** (except for Device 25) and I submit that there

16

is probable cause that the **Target Subjects** owned, possessed, or used the **Subject Electronic Devices** during their commission of the **Target Offenses** (see below), and a search of those devices will reveal evidence of racketeering and a drug trafficking conspiracy, in violation of 18 U.S.C. § 1962(d) and Title 21 U.S.C. §§ 841(a), 846.

41. WHEREFORE, I respectfully request that the Court issue a warrant authorizing members of the ATF, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation, to search the **Subject Electronic Devices**, as described in Attachment A, for the purpose of identifying electronically stored data particularly described in Attachment B and using the protocols described in Attachment B.

_____
Gary T. Smith
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to before me on  9 September 2018 , 2018

_____
The Honorable A. David Copperthite
United States Magistrate Judge

17

## ATTACHMENT A

### Description of the Items to be Searched

- A black Apple I-Phone (ATF Property number 31) (**Subject Electronic Device 1**)

- An Apple I-Phone (ATF Property number 38) (**Subject Electronic Device 5**);

- A black Apple I-Phone bearing IMEI number 990002287748766 (**Subject Electronic Device 7**);

- An Apple I-Phone bearing IMEI number 352006067031808 (**Subject Electronic Device 11**);

- An Apple I-Phone bearing IMEI number 35202606359836 (**Subject Electronic Device 12**);

- A black Apple I-Phone (ATF property number 61) (**Subject Electronic Device 19**);

- A pink Apple I-Phone (ATF property number 62) (**Subject Electronic Device 20**);

- A silver Apple I-Phone (IMEI 013884007360664) (**Subject Electronic Device 21**);

- A white Apple I-Phone bearing IMEI number 359300066793770 (**Subject Electronic Device 22**);

- A pink Apple I-Phone (ATF property number 97) (**Subject Electronic Device 25**)

The devices will be charged and powered on. The devices are in custody of the ATF and/or the Baltimore City Police Department. The devices and all readable and searchable contents will be downloaded to a "CelleBrite" or "XRY" or similar device. The contents downloaded on the "CelleBrite" or "XRY" or similar device will then be copied to a readable computer disc and reviewed by your affiant. A search warrant return will be provided to the Court thereafter.

## ATTACHMENT B

### Search Protocols

This warrant authorizes the search and seizure of the following electronically stored information, contained within the items described in Attachment A:

a. digital images;

b. digital videos;

c. records of incoming and outgoing voice communications;

d. records of incoming and outgoing text messages;

e. the content of incoming and outgoing text messages;

f. voicemails;

g. voice recordings;

h. contact lists;

i. social media applications and the content of such applications;

j. communication applications and the content of such applications;

k. the content of device back-up accounts;

l. records of web browser activity, history, and usage; and

m. location data

that are related to the investigation into a drug trafficking conspiracy as more fully described in the Affidavit.

Because of the possibility that the files examined pursuant to the warrant will include information that is beyond the scope of what the United States has demonstrated the existence probable cause to search for, the search shall be conducted in a manner that will minimize to the greatest extent possible the likelihood that files or other information for which there is not probable cause to search is not viewed.

While this protocol does not prescribe the specific search protocol to be used, it does contain limitations to what the government investigators may view during their search, and the

searching investigators shall be obligated to document the search methodology used in the event that there is a subsequent challenge to the search that was conducted, pursuant to the following protocol.

With respect to the search of any digitally/electronically stored information that is seized pursuant to this warrant, and described in Attachment A hereto, the search procedure shall include such reasonably available techniques designed to minimize the chance that the government investigators conducting the search will view information that is beyond the scope for which the probable cause exists.

The following list of techniques is a non-exclusive list which illustrates the types of search methodology that may avoid an overbroad search, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein:

a. Use of computer search methodology to conduct an examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether data falls within the items to be seized as set forth herein by specific date ranges, names of individuals, or organizations;

b. Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

c. Physical examination of the storage device, including digitally surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein; and

d. Opening or reading portions of files that are identified as a result of conducting digital search inquiries in order to determine their relevance.